UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Maurice Grimard,
    Petitioner

    v.                               Civil No. 03-cv-392-SM
                                            Opinion No. 2006 DNH 011
Bruce W. Catell, Warden,
New Hampshire State Prison,
    Respondent

## O R D E R

    Maurice Grimard, currently incarcerated in the New Hampshire State Prison and appearing pro se, petitions for a writ of habeas corpus.  28 U.S.C. 2254.  Before the court is respondent's motion for summary judgment.  Petitioner objects.  For the reasons given, respondent's motion for summary judgment is granted.

### The Legal Standard

    Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly limited the power of federal courts to grant habeas corpus relief to state prisoners.  A federal court may disturb a state conviction only when: (1) the state court adjudication "resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 399 (2000).

There is a distinction between decisions that are "contrary to" clearly established federal law and those involving an "unreasonable application" of federal law:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

2

## Background

After a four-day trial in the New Hampshire Superior Court, Maurice Grimard was convicted on three counts of selling cocaine, one count of possessing cocaine with intent to sell, and one count of conspiracy to sell cocaine.  For the possession and conspiracy convictions, petitioner was sentenced to two terms of not more than 15 years, nor less than 7 1/2 years, to be served concurrently.  For the three convictions for selling cocaine, he was sentenced to three terms of not more than 20 years, nor less than 10 years, to be served concurrently with one another but consecutively to the sentences for possession and conspiracy.

The three cocaine sales took place on May 19, June 2, and June 9, 1998.  Grimard made all three sales to an undercover police officer, Detective Ronald Dickerson of the New Hampshire Drug Task Force.  Dickerson was introduced to Grimard by a confidential informant, Paul Vachon, on May 13, 1998.  After May 13, Dickerson had only one contact with Vachon (a telephone call), and Grimard was not charged with any conduct involving Vachon.  Grimard's co-conspirator was Alfredo Vasquez (or some

other unknown individual).  Neither the State nor petitioner called Vachon as a witness at petitioner's trial.

According to documents from the Drug Task Force's investigative file on Vachon,[1] he was under investigation as early as November 1997.  He remained under investigation until he was arrested, on May 1, 1998, by Agent Mike Connolly, Investigator Kevin McCarthy, and Det. John Boles, based upon complaints sworn out by Det. Dickerson.  Vachon was charged with five counts of selling cocaine (on October 1, 14, and 30, 1997, and March 4 and April 28, 1998) and one count of possessing cocaine with intent to sell (on May 1, 1998).  In a negotiated disposition, Vachon pled guilty to one count of selling cocaine and one count of possessing cocaine with intent to sell.  On February 23, 2000, he was given a deferred sentence of five to twenty years on the former conviction and a consecutive suspended sentence of three and one-half to seven years on the later conviction.

---

[1] The investigative file was not produced during the state prosecution.  After Grimard was convicted, he obtained the Vachon file under the New Hampshire Right-to-Know law.

In his petition, Grimard asserts that he is being incarcerated unconstitutionally because his conviction resulted from:

(1) the prosecution's failure to disclose exculpatory evidence, in violation of his right to due process, under Brady v. Maryland, 373 U.S. 83 (1963);

(2) the prosecution's introduction of perjured testimony, in violation of his right to due process, under Albright v. Oliver, 510 U.S. 266 (1994);

(3) the prosecution's failure to disclose an agreement between the State and a confidential informant, in violation of his right to due process, under Giglio v. United States, 405 U.S. 150 (1972);

(4) prosecutorial misconduct, in the form of misrepresenting and/or failing to disclose an agreement between the State and a confidential informant, in violation of his right to due process, under Darden v. Wainwright, 477 U.S. 168 (1986);

(5) the erroneous dismissal of his state habeas corpus petition based upon a ruling that he waived ineffective assistance of counsel claims arising from his trial attorney's failure to raise a double jeopardy objection;

(6) the erroneous dismissal of his state habeas corpus petition based upon a ruling that he waived ineffective assistance of counsel claims arising from his trial attorney's failure to object to the effective amendment of the indictment during jury instructions;

(7)   the erroneous dismissal of his state habeas corpus
      petition based upon a ruling that he waived his
      right to object to a disproportionate and illegal
      sentence, in violation of his Eighth Amendment
      rights, under Harmelin v. Michigan, 501 U.S. 957
      (1991); and

(8)   the ineffective assistance of his trial counsel.


## Discussion

A. Ground One

In his first ground for relief, petitioner asserts that his

conviction was obtained as a result of the State's failure to

produce exculpatory evidence during discovery, that is, the Drug

Task Force's investigative file on Paul Vachon.  According to

petitioner, information from that file would have allowed him to

impeach the State's key witness, Det. Dickerson, and more

effectively mount an entrapment defense.  Respondent moves for

summary judgment on grounds that the evidence is not exculpatory.


Petitioner first raised this issue in a pro se Motion to

Vacate Convictions and Bar Reprosecution which was denied in a

margin order dated July 19, 2001.  In an order following

reargument of that motion, by counsel, Judge Lynn reaffirmed his

denial of the motion and explained his reasoning:

> The notion that anything contained in the reports
> related to the investigation of Paul Vachon could in
> any way be viewed as exculpatory of the defendant is
> chimerical.  As the State aptly points out, assuming
> the "source" for drugs Vachon was talking about in his
> pre-May 12, 1998 meetings with the police (when Vachon
> was a target, not someone working with the police) was
> in fact the defendant rather than Vachon's other
> source, the substance of those discussions could not
> possibly be regarded as exculpatory or in any way
> lending the slightest credence to an entrapment
> defense.  The fact that the defendant, as a conceded
> (under this theory) source for drugs "did not want to
> meet anyone new" or was "feeling warm" (i.e., concerned
> that law enforcement might be on to him) is
> inculpatory, not exculpatory, since it shows that the
> defendant had a predisposition to sell drugs to others
> and was only concerned that any new buyer he might meet
> would turn out to be a police officer.

By order dated December 18, 2001, the New Hampshire Supreme Court

summarily affirmed Judge Lynn's denial of petitioner's motion to

vacate.


    Under <u>Brady</u>, "the suppression by the prosecution of evidence

favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution."

373 U.S. 83, 87 (1963).  "[T]he materiality standard for <u>Brady</u>

claims is met when 'the favorable evidence could reasonably be

taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Banks v. Dretke, 540 U.S. 668, 698 (2004) (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).  Confidence in the verdict is undermined by a showing that with the suppressed evidence, there is a "reasonable probability of a different result." Banks, 540 U.S. at 699.

The evidence petitioner characterizes as exculpatory Brady material consists, generically, of the following: police reports written by Det. Dickerson; approvals for one-party intercepts granted by Brian Graf and Jane Young of the New Hampshire Attorney General's office; Drug Enforcement Agency reports written by Special Agent Michael Connolly; reports from a PEN register placed on Vachon's telephone; and miscellaneous surveillance reports.  Substantively, those records document: (1) Det. Dickerson's March 4, April 1, and April 2, 1998, requests to tape record telephone conversations between himself and Vachon; (2) telephone conversations between Det. Dickerson and Vachon on March 3 and 4, April 1, 7, and 9, 1998; (3) Det. Dickerson's purchases of cocaine from Vachon on March 4 and April 29, 1998; (4) Det. Dickerson's unsuccessful attempt to have

Vachon set up a meeting with an unnamed supplier on April 28, 1998; (5) Michael Connolly's observation of an April 29, 1998, meeting between Vachon and a person that Special Agent Yerrington identified as Grimard; (6) Det. Ganley's observation of the April 29 meeting; (7) Investigator Kevin McCarthy's April 30, 1998, discovery that a telephone number on Vachon's PEN register belonged to Grimard; (8) Vachon's May 1, 1998, arrest, after which Vachon identified Grimard as his source of cocaine; (9) the six criminal complaints against Vachon; and (10) the ultimate disposition of the charges against Vachon.

In petitioner's view, that evidence is exculpatory because it supports his entrapment defense and, had it been disclosed prior to trial, would have assisted him and his counsel in devising trial strategy and deciding whether or not to call Vachon as a witness.  That argument was resolved against petitioner on the merits in the state court.  Accordingly, the deferential AEDPA standard of review applies.  Judge Lynn's determination that the evidence was not exculpatory is neither contrary to, nor an unreasonable application of, Supreme Court

precedent.  Therefore, respondent is entitled to judgment as a matter of law on Ground One.

## B. Ground Two

In his second ground for relief, petitioner asserts that his conviction was obtained as a result of the State's solicitation of, and failure to correct, perjured testimony from Detective Dickerson.  In particular, petitioner claims that Det. Dickerson perjured himself by testifying that the State first learned about him on May 12, 1998.  That testimony was perjury, in petitioner's view, because the discovery material allegedly suppressed by the State (i.e., the Vachon file) demonstrates that Vachon had been cooperating with law enforcement officers since December 1997, and that petitioner had been approached by Vachon several times prior to May 12, at Det. Dickerson's behest, and had declined to sell Vachon any drugs.  Respondent moves for summary judgment on grounds that Det. Dickerson did not commit perjury and that, even if he was incorrect about when he first learned petitioner's name, any such mistake was entirely inconsequential.

Petitioner first raised the issue identified in Ground Two in his pro se motion to vacate.  When that motion was reargued, counsel did not pursue the perjury issue and, as a result, Judge Lynn did not address it in his order of September 28, 2001. Petitioner also did not raise it in his notice of appeal to the New Hampshire Supreme Court.  Petitioner raised the argument again, in a May 15, 2004, petition for a writ of habeas corpus, his second such petition in the state courts.  That petition was denied in an order dated July 9, 2004, in which Judge Hicks found, as a factual matter, that "the first time the petitioner's name came to the attention of law enforcement agents was at the debriefing meeting subsequent to Mr. Vachon's arrest in May, 1998."  Judge Hicks further found "no evidence of perjury by Detective Dickerson."  By order dated September 15, 2004, the New Hampshire Supreme Court summarily affirmed Judge Hicks's denial of Grimard's second state habeas petition.

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  Napue v. Illinois, 360 U.S. 264, 269 (1959) (citations omitted).  "The

11

same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  Id. (citations omitted).  Here, however, Judge Hicks determined, as a factual matter, that Det. Dickerson did not perjure himself, and that determination was not unreasonable.

At trial, Det. Dickerson testified, on direct examination, in the following way:

Q    How did that investigation [into Maurice Grimard]
     come about, Detective Dickerson?

A    Through an informant.

Q    And who was that informant?

A    Paul Vachon.

Q    How did you meet the defendant?

A    Paul Vachon introduced me to him.

Q    Did you have contact with the defendant on May
     18th of 1998?

A    Yes, I did.

Q    What was the nature of that contact?

A    A phone conversation.

Q    How did that come about?

A    I paged the defendant.

Q     What was your purpose in paging the defendant?

A     I was going to order up two ounces of cocaine.

Q     When we talk about May 18th, if we use May 18th as
      the starting point, after May 18th was Paul Vachon
      ever with you when you were making contact with
      the defendant?

A     No, at that point in the investigation he was out
      of it.

(Trial Transcript, Day 1 (hereinafter "Tr. I") at 90-91.)  Under

cross-examination, Det. Dickerson offered the following testimony

regarding his involvement with and knowledge of Grimard:

Q     Yet actually your personal involvement in this
      case really commenced, insofar as it involved
      Mr. Grimard, on May 12th, right?

A     That is correct.  That's correct.

(Tr. II at 25.)  And on the same topic, Det. Dickerson testified

on redirect examination:

Q     We had some discussion on your cross about your –
      the first time you heard the defendant's name.
      What date was that?

A     The first time I heard his name?

Q     Yes.

A     May 12th.

13

(Tr. II at 180.)

The earliest date on which petitioner's name appears in the Vachon file is April 29, 1998.  In reports bearing that date, Special Agent Connolly and Det. Ganley stated that Special Agent Yerrington identified a person meeting with Vachon as Grimard. In a report dated April 30, Investigator McCarthy stated that when he called a particular telephone number from Vachon's PEN register, a person on the other end answered "This is Mo."  In a report dated May 1, 1998, Det. John Boles indicated that Vachon, after his arrest, identified Grimard as his source for cocaine. And at the hearing on petitioner's second state habeas petition, Det. Boles testified that Det. Dickerson was not present at Vachon's post-arrest debriefing.  Finally, petitioner has produced no police reports written by Det. Dickerson before May 12 that contain petitioner's name.

Based upon the established record, it was hardly unreasonable for Judge Hicks to determine, as a factual matter, that Det. Dickerson did not commit perjury.  While the Vachon file suggests that some members of the Drug Task Force knew

14

petitioner's name as early as April 29, there is no evidence to suggest that Det. Dickerson knew petitioner's name before May 12. And, importantly, Dickerson never testified about what the Task Force knew collectively; he testified based upon his own personal knowledge.  Because Judge Hicks did not unreasonably determine that Det. Dickerson did not testify untruthfully, respondent is entitled to judgment as a matter of law on Ground Two.

C. Ground Three

In his third ground for relief, petitioner asserts that his conviction was obtained as a result of the State's false representation, during pre-trial hearings, that Paul Vachon had not been offered a deal by the State.  Petitioner's claim rests upon Vachon's February 2000 sentencing as well as the State's decision to nol pros four charges of selling cocaine.  Vachon was not sentenced to imprisonment.  Petitioner argues that had he known of the alleged deal with Vachon, he would have called Vachon as a witness to support his entrapment defense.

Respondent moves for summary judgment on grounds that petitioner has produced no evidence that there was a deal with

Vachon prior to petitioner's trial and that, even if there was,
disclosure of it would not have resulted in a different outcome
at trial because, in contrast to the factual situation in <u>Giglio</u>
<u>v. United States</u>, 405 U.S. 150 (1972), Vachon was not a witness.

Petitioner first raised the issue identified in Ground Three
in his <u>pro se</u> motion to vacate.  In an order following reargument
of that motion, by counsel, Judge Lynn reaffirmed his denial of
the motion and explained his reasoning:

> In addition, with respect to the alleged "deal"
> between the State and Vachon, even if it were true that
> there was such a "deal" which the State failed to
> disclose, the defendant fails to articulate how such
> [a] deal would have been relevant to any issue other
> than Vachon's credibility.  And since Vachon did not
> testify at the trial, his credibility was not at issue.

By order dated December 18, 2001, the New Hampshire Supreme Court
summarily affirmed the denial of petitioner's motion to vacate.

In <u>Giglio</u>, the Supreme Court held that a criminal defendant
was entitled to a new trial when the government "failed to
disclose an alleged promise made to its key witness that he would
not be prosecuted if he testified for the Government," <u>id.</u> at

16

151, and "the Government's case depended almost entirely on [the witness's] testimony," id. at 154.

Petitioner presented the state court with no evidence of a Vachon deal; he offered only his own surmise that such a deal must have been in place, given the sentence that Vachon received. But the dispositive point is that identified by Judge Lynn – Vachon did not testify, so Giglio doesn't apply.  Judge Lynn's ruling was neither contrary to nor an unreasonable application of Giglio.  Accordingly, respondent is entitled to judgment as a matter of law on Ground Three.

D. Ground Four

In his fourth ground for relief, petitioner asserts that his conviction was obtained as a result of prosecutorial misconduct, in the form of suppressing discovery material, suborning (and failing to correct) perjury, and misrepresenting the deal the State gave Vachon.  Ground Four is, in form and substance, derivative of the first three asserted grounds.  Thus, respondent is entitled to judgment as a matter of law on Ground Four.

E. Ground Five, Six, and Seven

In his fifth, sixth, and seventh grounds for relief,
petitioner merely asserts that New Hampshire Superior Court Judge
(Mohl, J.) got it wrong when he determined that, under state law,
petitioner's ineffective assistance and unlawful sentence claims
had been procedurally defaulted.  However,

> [o]rdinarily a federal court may not issue a writ [of
> habeas corpus] "based on a perceived error of state
> law," although there may be an exception "if an error
> of state law could be sufficiently egregious to amount
> to a denial of equal protection or of due process of
> law."

Brown v. Maloney, 267 F.3d 36, 44 (1st Cir. 2001) (quoting Pulley
v. Harris, 465 U.S. 37, 41 (1984); citing Barclay v. Florida, 463
U.S. 939, 957–58 (1983) (plurality opinion) ("[M]ere errors of
state law are not the concern of this Court unless they rise for
some other reason to the level of a denial of rights protected by
the United States Constitution.")).  Here, petitioner does not
assert that Judge Mohl's allegedly erroneous application of the
state's procedural default rule, see Avery v. Cunningham, 131
N.H. 138 (1988), denied him equal protection or due process.
Thus, he has failed to raise claims that are cognizable in the

18

context of a federal habeas petition.  Accordingly, respondent is entitled to summary judgment on grounds five, six, and seven.

F. Ground Eight

In his eighth ground for relief, petitioner asserts that his conviction was obtained as a result of the ineffective assistance of counsel.  Specifically, he contends that his counsel was prevented from performing effectively by the misconduct of the prosecutor, and also performed ineffectively by failing to raise the issue of double jeopardy and by failing to object when the trial judge constructively amended the indictment against him.

In his first state habeas petition, petitioner contended that he had received ineffective assistance of counsel because his trial attorney failed to object to the jury instructions on two grounds: double jeopardy and impermissible amendment of the indictment.  Petitioner did not raise the issue of ineffective assistance in either his direct appeal or his post-appeal motion to vacate the conviction.  Similarly, he raised no claim, in either proceeding, based upon double jeopardy or impermissible amendment of the indictment.

19

As noted earlier Judge Mohl, relying on <u>Avery v. Cunningham</u>, 131 N.H. 138, 143 (1988) ("New Hampshire has adopted the common law rule that habeas corpus is not a substitute for an appeal.") (citation omitted), denied relief based upon petitioner's failure to raise the issues identified in his habeas petition in either his direct appeal or his motion to vacate his convictions.  It is not clear from Judge Mohl's order whether the procedural bar was imposed as a result of Grimard's failure to raise claims concerning double jeopardy and amendment of the indictment, or his failure to raise ineffective assistance claims.  Because Grimard framed his state habeas claim in terms of ineffective assistance it is likely that Judge Mohl applied the state's procedural default rules to the claims as raised – that is, to the ineffective assistance of counsel claims.  Petitioner appealed the denial of his habeas petition, and the New Hampshire Supreme Court declined the appeal in an order dated August 1, 2003.

A state court's determination that federal claims have been procedurally defaulted constitutes an "independent and adequate

state ground" for dismissal that ordinarily bars federal review,

absent a showing of "cause" for the default and prejudice:

> Generally, habeas review is precluded when a state court reaches its decision on an independent and adequate state law ground.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991).  A state court's decision to find a forfeiture . . . is an independent and adequate ground for decision so long as the state court consistently applies its [forfeiture] rule and has not waived it in the particular case by basing the decision on some other ground.  See Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995). . . .

Horton v. Allen, 370 F.3d 75, 80–81 (1st Cir. 2004) (parallel

citations omitted).

Here, there is a problem with the state's procedural default

finding.  New Hampshire does not consistently apply the Avery

rule to ineffective assistance of counsel claims.  See Merritt v.

Warden, No. Civ. 03-311-JD, 2004 WL 443363, at *3 (D.N.H. Mar.

11, 2004) (citing Humphrey v. Cunningham, 133 N.H. 727, 732–33

(1990); Avery, 131 N.H. 138, 144–45; State v. Riendeau, Nos. 98–

S-329 and 98-S-1316, 2001 WL 34013567, at 4 n.4 (N.H. Super. Ct.

Nov. 14, 2001)).  For example, in Humphrey, decided two years

after Avery, the New Hampshire Supreme Court rejected the State's

argument that a habeas petitioner had procedurally defaulted his ineffective assistance claim by failing to raise it on appeal. Humphrey, 133 N.H. at 733.  Because New Hampshire does not consistently apply the Avery rule to ineffective assistance claims, Judge Mohl's procedural default ruling does not, for federal habeas purposes, constitute an independent and adequate state law ground warranting dismissal of petitioner's claims. Consequently, petitioner is entitled to raise his federal ineffective assistance claims here.

"A criminal defendant claiming a Sixth Amendment ineffective assistance violation must establish that (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984); citing Mello v. DiPaulo, 295 F.3d 137, 142 (1st Cir. 2002)).

Counsel's failure to raise a particular issue constitutes ineffective assistance only when the issue "was so obvious and promising that no competent lawyer could have failed to pursue it." Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005) (quoting Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999)).  In assessing objective reasonableness, the standard of review is highly deferential.  A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689.  Thus, to prevail on his ineffective assistance claims, petitioner must establish that the alleged errors by counsel were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting Strickland, 466 U.S. at 687).  Petitioner's trial counsel's performance was not objectively unreasonable.

1. Double Jeopardy

Petitioner first claims that his trial counsel provided ineffective assistance by failing to object to the jury instructions on double jeopardy grounds.  Specifically, petitioner argues that each of his convictions for selling cocaine constitutes a successive punishment for the same conduct that supported his conspiracy conviction.  In other words, he argues that sale of cocaine is a lesser-included offense of conspiracy to sell cocaine, and that his attorney provided ineffective assistance by failing to raise that issue at trial. Petitioner is wrong.  Counsel was not required to present incorrect legal argument.  Conspiracy to commit a substantive offense and commission of the substantive offense itself are two distinct crimes:

> [I]t has long been established that "conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes," [United States v.] Lanoue, 137 F.3d [656,] 662 [(1st Cir. 1998)], because "the agreement to do the act is distinct from the [completed] act itself," United States v. Felix, 503 U.S. 378, 390-91 (1992) (internal quotation marks omitted) (adhering to line of cases holding that separate prosecutions for conspiracy and for underlying substantive offenses do not violate the Double Jeopardy Clause).

<u>United States v. Fornia-Castillo</u>, 408 F.3d 52, 69 (1st Cir. 2005)
(parallel citations omitted).  Petitioner's double jeopardy claim
is without merit, therefore his inadequate assistance claim is
without merit to the extent the latter depends on the former.
Respondent is entitled to judgment as a matter of law on the
portion of petitioner's ineffective assistance claim related to
the double jeopardy issue.

### 2. Constructive Amendment

Petitioner also claims that his trial counsel provided
ineffective assistance by failing to object to the state court's
alleged constructive amendment of the conspiracy indictment while
instructing the jury.  Petitioner argues that the trial court
told the jury that the overt act element of the conspiracy charge
could be met by proof that petitioner had committed any of the
acts charged in the indictment<u>s</u> against him, rather than any of
the overt acts alleged in the conspiracy indictment.  This
matters, according to petitioner, because the conspiracy
indictment listed, as overt acts, only two of the three drug
sales with which he was charged by separate indictment.  In his
view, the trial judge impermissibly amended the conspiracy

25

indictment by adding an uncharged overt act to it, namely the May 19, 1998, cocaine sale for which he was indicted, but that was not included as an overt act in the conspiracy indictment.  He says his trial was unconstitutionally unfair because he was not put on notice that in order to defend himself against the conspiracy charge, he had to defend himself against allegations concerning the May 19 sale.

Respondent moves for summary judgment on grounds that: (1) the alleged amendment that petitioner identifies, in the trial transcript, was the result of either a misstatement by the judge or a transcription/typographic error by the stenographer; (2) any erroneous impression that might have been conveyed by the allegedly improper instruction was corrected by a subsequent accurate statement delivered orally by the judge, and by the written instructions, which were provided to the jury and which do not include the alleged error; and (3) any error was ultimately harmless.

According to the trial transcript, Judge Lynn instructed the jury, regarding the third element of the conspiracy charge, that

26

the State was obligated to prove "that at some time during the existence or life of the conspiracy one of its members performed one of the overt acts alleged in the indictments for the purpose of furthering or advancing the objectives of the conspiracy." (Tr. IV at 75.)  In the written instructions, which were provided to the jury, the word "indictment" was used rather than the word "indictments."  When offering further oral instruction on the overt act element, Judge Lynn said:

> In order to sustain its burden of proof, the State must also prove beyond a reasonable doubt that during the life of the conspiracy one of the members of the conspiracy knowingly performed at least one of the overt acts alleged in the indictment and that this overt act was performed for the purpose of advancing the goals of the conspiracy.

(Tr. at 78.)


If, in fact, Judge Lynn did misread his instruction on the third element of conspiracy, substituting "indictments" for "indictment," petitioner's trial counsel did not provide constitutionally deficient (that is, objectively unreasonable) assistance by failing to object.  Judge Lynn's slip of the tongue – if any – was innocuous.  Moreover, by the time petitioner's

counsel could have made an objection, the error had been corrected orally, by Judge Lynn's subsequent use of the term "indictment" rather than "indictments," and, as petitioner's counsel well knew, the jury was to be provided with a written copy of the jury instructions which used the singular throughout. Thus, it would have been perfectly reasonable for petitioner's counsel to determine that an objection would serve no useful or practical purpose since a correct statement and provision of the written instructions were already in place.  Because petitioner's failure to object to Judge Lynn's putative misstatement was not objectively unreasonable – the issue was hardly a "promising one."  Respondent is entitled to judgment as a matter of law on the portion of petitioner's ineffective assistance claim related to the issue of constructive amendment of the indictment.

Moreover, even if trial counsel's failure to object might be deemed objectively unreasonable, petitioner's claim would still fail on the second prong of the Strickland test.  There is little chance, much less a reasonable probability, that the outcome of the trial would have been different absent the erroneous use of the plural "indictments" rather than the singular "indictment"

when the judge instructed on the conspiracy indictment, under these circumstances.  Even if the jurors had treated the May 19 sale as an overt act for purposes of the conspiracy charge, they also found petitioner guilty of two other cocaine sales and of possessing cocaine with intent to sell, and all three of those acts were listed as overt acts in the conspiracy indictment.  So, the jury unquestionably found multiple qualifying overt acts, beyond a reasonable doubt, sufficient to support the conspiracy conviction.  Thus, even without the May 19 sale, the jury found, beyond a reasonable doubt, that petitioner had committed three of the overt acts listed in the conspiracy indictment.

## Conclusion

For the reasons given, respondent's motion for summary judgment (document no. 26) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 31, 2006

cc:  Maurice Grimard, pro se
     Nicholas P. Cort, Esq.